STATE OF MINNESOTA

IN SUPREME COURT

A24-1465

Workers' Compensation Court of Appeals                                    Procaccini, J.

Nicholas Rowe,

                    Respondent,

vs.                                                                      Filed: July 22, 2026
                                                                 Office of Appellate Courts
City of Minneapolis, Self-Insured,

                    Relator.

————————————

Ashley N. Biermann, Alexa R. Hottle, Meshbesher & Spence, Minneapolis, Minnesota, for respondent.

Jeffrey J. Lindquist, Anthony Gabor, Justine K. Wagner, Gries Lenhardt Allen, PLLP, Saint Michael, Minnesota, for relator.

Paul A. Merwin, Patricia Y. Beety, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

————————————

S Y L L A B U S

1.       Under the Workers' Compensation Act, Minn. Stat. § 176.011, subd. 15(d)–(e), the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) includes text revisions to the DSM; an independent psychological evaluation (IPE) is not the only way an employer can rebut the statutory presumption triggered by an employee's post-traumatic stress disorder diagnosis; and a

1

compensation judge is not barred from considering an employer's IPE based on an outdated edition of the DSM.

2. The Workers' Compensation Court of Appeals erred in setting aside the compensation judge's finding that the employer rebutted the statutory presumption, because its decision to set aside the finding rested solely on the fact that the employer's expert relied on an outdated edition of the DSM.

3. Alternative arguments raised by the employee but not reached by the Workers' Compensation Court of Appeals are remanded for its consideration.

Reversed and remanded.

O P I N I O N

PROCACCINI, Justice.

We are asked to determine whether the Workers' Compensation Court of Appeals (WCCA) erred when it reversed a compensation judge's determination that respondent Nicholas Rowe, a former Minneapolis police officer, was ineligible for workers' compensation benefits for post-traumatic stress disorder (PTSD) under the Workers' Compensation Act. To resolve this question we consider the ways in which an employer can rebut the statutory presumption that an employee's PTSD diagnosis is an occupational disease "due to the nature of employment" under Minnesota Statutes section 176.011, subdivision 15(e).

Although the parties agree that Rowe was entitled to the statutory presumption, they dispute whether Rowe's employer, relator City of Minneapolis, rebutted that presumption. *See id.* The WCCA set aside the compensation judge's finding that the City

2

had rebutted the presumption, determining that the compensation judge erred by considering the City's expert opinion because the opinion relied on an outdated edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM). The WCCA concluded that the only way an employer may rebut the presumption is with an independent psychological evaluation (IPE) based on the most recently published edition of the DSM, and that an employer's IPE based on an outdated edition of the DSM cannot be considered as a matter of law. Because the WCCA determined that the compensation judge should not have considered the City's expert opinion, the WCCA made its own finding that the City had failed to rebut the presumption.

Although we agree with the WCCA that the City's expert relied on an outdated edition of the DSM, we do not agree that the only way for an employer to rebut the presumption is with an IPE, or that an employer's IPE based on an outdated edition of the DSM cannot be considered as a matter of law. We hold that the WCCA erroneously set aside the compensation judge's finding on this basis. Accordingly, we reverse the decision of the WCCA and remand to the WCCA for consideration of two alternative arguments raised by Rowe that the WCCA did not reach.

**FACTS**

Rowe served as a Minneapolis police officer for approximately 25 years. Before Rowe was hired, a psychologist conducted a pre-employment psychological examination and reported that Rowe exhibited no significant personality or emotional problems. Rowe testified that over the course of his career, he responded to five mass shootings, six

3

officer-involved shootings, hundreds of homicide calls, and six incidents involving deceased children.

Rowe sought psychological treatment for the first time in October 2021. Rowe's counselor noted that Rowe struggled with depression, anger, anxiety, lack of motivation, and intrusive thoughts. The counselor diagnosed Rowe with PTSD and recommended that he cease work as a police officer.[1]

Dr. Kasey Aleknavicius, a licensed psychologist, performed an IPE on Rowe in early 2022.[2] Dr. Aleknavicius reviewed Rowe's medical history, conducted a clinical interview, and administered various psychological tests, including the Clinician Administered PTSD Scale for DSM-5 (CAPS-5) and the Minnesota Multiphasic Personality Inventory-3 (MMPI-3). In a report dated March 25, 2022, Dr. Aleknavicius relied on the DSM-5 to diagnose Rowe with PTSD and major depressive disorder.[3] Dr. Aleknavicius's report did not mention the DSM-5-TR, a text revision to the DSM-5,

---

[1]     Because the counselor is not a licensed psychologist or psychiatrist, her diagnosis was not a valid diagnosis of PTSD under the Workers' Compensation Act, Minn. Stat. § 176.011, subd. 15(d).

[2]     The top of Dr. Aleknavicius's report states that she evaluated Rowe on March 3, 2022, but she lists a different date—February 9, 2022—in the narrative portion of the report. At a hearing before the compensation judge, she testified that she believed that she performed the evaluation on February 9, 2022, but she was uncertain.

[3]     For the purposes of the Workers' Compensation Act, PTSD is defined as "the condition as described in the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders [DSM] by the American Psychiatric Association." Minn. Stat. § 176.011, subd. 15(d). The DSM is a widely accepted clinical manual published by the American Psychiatric Association that establishes criteria to assist mental health professionals in the diagnosis of mental disorders. *See Smith v. Carver County*, 931 N.W.2d 390, 397–98 (Minn. 2019).

which was published by the American Psychiatric Association on March 18, 2022. Dr. Aleknavicius also found that Rowe met the criteria for alcohol abuse disorder, which she described as secondary to his PTSD. Dr. Aleknavicius opined that the severity of Rowe's symptoms precluded him from working as a police officer.

In April 2022, Dr. Aleknavicius filed a PERA (Public Employees Retirement Association) Disability Medical Report stating that Rowe was precluded from working as a police officer due to his PTSD, and Rowe stopped working. The City denied primary liability for Rowe's alleged PTSD injury, stating that the City was unable to verify whether Rowe met the criteria for a PTSD diagnosis and that the statutory presumption did not apply. *See* Minn. Stat. § 176.011, subd. 15(e). In August 2022, Rowe filed a claim petition with the Office of Administrative Hearings,[4] seeking workers' compensation benefits beginning in March 2022.

At the City's request, Dr. Kenneth Young, a licensed psychologist, conducted an IPE on Rowe. Dr. Young reviewed Rowe's medical records and administered the CAPS-5 and the MMPI-3. He then issued a report on November 17, 2022, describing his evaluation of Rowe and his perspective on Dr. Aleknavicius's diagnosis. Dr. Young determined that Rowe did not meet the diagnostic criteria for PTSD in the DSM-5. He found "no clear and consistent evidence that Mr. Rowe meets, or has ever met, the criteria for PTSD," and he determined that the evidence best supports a diagnosis of alcohol

---

[4] The Office of Administrative Hearings is now known as the Court of Administrative Hearings. *See* Act of May 23, 2025, ch. 39, art. 2, §§ 17, 18, 2025 Minn. Laws 1196, 1219.

abuse disorder. Dr. Young also took issue with Dr. Aleknavicius's diagnosis. He opined, for example, that Dr. Aleknavicius's report included errors; that her methodology was flawed because she did not include information regarding symptom frequency, intensity, or connection to traumatic events; that she did not have access to Rowe's full medical history; and that she minimized Rowe's alcohol consumption. Like Dr. Aleknavicius's March 2022 report, Dr. Young's November 2022 report did not mention the DSM-5-TR.

Rowe had a follow-up psychological evaluation with Dr. Aleknavicius in February 2023, and Dr. Aleknavicius issued a second report on July 18, 2023. In her July 2023 report, Dr. Aleknavicius found that Rowe did *not* satisfy Criterion B—one of several criteria required for a PTSD diagnosis—which refers to intrusive symptoms associated with a traumatic event. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 301–302 (5th ed. 2022). Despite the absence of this criterion, Dr. Aleknavicius diagnosed Rowe with PTSD, relying on the DSM-5-TR. Although Dr. Aleknavicius's report does not explicitly state as much, Dr. Aleknavicius's July 2023 PTSD diagnosis appears to be a so-called "lifetime" PTSD diagnosis.[5]

---

[5]    For diagnosing individuals older than age six, the DSM lists eight diagnostic criteria for PTSD, designated A through H. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 301–303 (5th ed. 2022). The DSM-5-TR states that "[f]or a *current* diagnosis of PTSD, Criteria B, C, D, and E, must all be met for more than 1 month, for at least the past month." *Id.* at 307 (emphasis added). The DSM-5-TR also refers to a "lifetime diagnosis of PTSD," for which "there must be a period of time lasting more than 1 month during which Criteria B, C, D, and E have all been met for the same 1-month period of time." *Id.* at 307–08. Because Dr. Aleknavicius found that Rowe did *not* satisfy Criterion B for the month immediately

The compensation judge held a two-day hearing to determine Rowe's eligibility for workers' compensation benefits. Four witnesses testified: Rowe, his wife, Dr. Aleknavicius, and Dr. Young.

Rowe testified about his work as a police officer, the traumatic incidents he experienced, and his mental health symptoms. His wife corroborated his deteriorating mental health and noted marked changes in his personality.

Dr. Aleknavicius testified that although Rowe had met all criteria for a PTSD diagnosis when she initially diagnosed him in March 2022, her February 2023 follow-up evaluation under the DSM-5-TR showed that Rowe's Criterion B symptoms "were not significant enough in the way that he described them in that previous month to meet the clinical threshold." She cautioned that basing a PTSD diagnosis solely on past-month symptoms carries a "significant risk for misdiagnosis," and she explained that the DSM-5-TR added a "lifetime diagnosis" to address this concern by requiring only that the criteria "must have been met at any time in the person's life." She opined that the DSM-5-TR clarifies that "if a person meets criteria and then they get a little bit better and now one symptom doesn't meet all the criteria, it's not a different diagnosis." Rather, she

_____

prior to the evaluation, it appears that Dr. Aleknavicius diagnosed Rowe with "lifetime" PTSD in her July 2023 report.

       We were confronted with a similar "lifetime" PTSD diagnosis in *Peterson v. City of Minneapolis*, 23 N.W.3d 582, 589 (Minn. 2025). There, we expressly declined to "endorse any interpretation of the DSM," because "[t]he standard of review [did] not allow us to substitute our judgment for the judgment of the compensation judge as to 'which of the professional diagnoses [was] more credible and persuasive.' " *Id.* at 594 (quoting *Tea v. Ramsey Cnty.*, 5 N.W.3d 114, 120 (Minn. 2024) (alteration in original)). Accordingly, we have not previously endorsed or rejected the validity of a "lifetime" PTSD diagnosis, and—as noted below—we decline to do so here.

maintained that "[i]t's the same diagnosis until all symptoms are in remission."

Dr. Aleknavicius also criticized Dr. Young for using only the "CAPS-5 (past month),"

and not the "CAPS-5 (worst month)." She further noted that by the time Dr. Young

evaluated Rowe in November 2022—about eight months after her initial evaluation—

Rowe had left police work and was in therapy. Dr. Aleknavicius explained that these

changes would be expected to shift the presentation of Rowe's symptoms.

Dr. Young testified that Rowe met the criteria for alcohol abuse disorder but not

PTSD. He emphasized that many PTSD symptoms can also be explained by heavy

alcohol consumption, and he criticized Dr. Aleknavicius for not sufficiently accounting

for Rowe's drinking or aligning her symptom timeline with Rowe's self-reports of

symptoms. Dr. Young also testified that the CAPS-5, which both he and Dr. Aleknavicius

used to evaluate Rowe for PTSD, reflects the criteria in both the DSM-5 and the

DSM-5-TR because the criteria are "exactly the same." He explained that because the

PTSD criteria are identical in the DSM-5 and the DSM-5-TR, there is no "CAPS-5-TR."

According to Dr. Young, the "text revision" contained in the DSM-5-TR relates to

updates to the discussion area of each diagnosis and summarizes the state of the research

in particular areas.

Dr. Young also directly addressed Dr. Aleknavicius's second evaluation of Rowe

and the concept of lifetime PTSD, testifying that "lifetime PTSD" is not a diagnosis of

*current* PTSD. He opined that the text discussion of lifetime PTSD in the DSM-5-TR

refers to research to help identify prevalence rates and that the "CAPS-5 (worst month)"

is a research tool used to determine whether someone has *ever* met the criteria for PTSD

8

over the course of their lifetime. He also explained that because PTSD is not a permanent condition, the "CAPS-5 (past month)"—which evaluates whether someone *currently* meets the criteria for PTSD—is used to reach a current diagnosis. Dr. Young then testified that if someone does not meet *all* criteria, then that person does not qualify for a current PTSD diagnosis.

The compensation judge found that Rowe was entitled to the statutory presumption that he had work-related PTSD. But the compensation judge further found that the City had established substantial factors rebutting the presumption. In support, the compensation judge adopted Dr. Young's opinion, finding it more persuasive than Dr. Aleknavicius's opinion. The compensation judge explained that Dr. Young had identified several inconsistencies in Rowe's assertions and personal history that led Dr. Young to diagnose Rowe with alcohol use disorder, rather than PTSD. The compensation judge also noted that Dr. Young had offered thorough findings and well-reasoned disagreements with Dr. Aleknavicius.

As to Dr. Young's use of an outdated DSM-5 instead of the DSM-5-TR to diagnose Rowe's condition, the compensation judge described this as a "red herring and irrelevant." The compensation judge noted that Dr. Young had testified that the diagnostic criteria in the DSM-5 and DSM-5-TR were identical, that Dr. Aleknavicius also used the DSM-5 in her initial March 2022 report, and that Dr. Aleknavicius's July 2023 report used the same diagnostic tool—the CAPS-5—which remained unchanged after the publication of the DSM-5-TR.

9

Finding that the City had rebutted the presumption, the compensation judge deemed other issues raised by the parties as moot and denied Rowe's claim for workers' compensation benefits.

Rowe appealed,[6] and the WCCA vacated the compensation judge's order, determining that the compensation judge erred as a matter of law in accepting Dr. Young's opinion.

The WCCA began its analysis by interpreting Minnesota Statutes section 176.011, subdivision 15(e), which governs how employers can rebut the statutory PTSD presumption. The WCCA first reasoned that the most recently published edition of the DSM is the "touchstone" for the PTSD diagnosis required to trigger the statutory presumption. *Rowe v. City of Minneapolis*, No. WC24-6550, 2024 WL 3973710, at *9 (Minn. WCCA Aug. 16, 2024). The WCCA explained that it was significant that Minnesota Statutes section 176.011, subdivision 15(d), defines PTSD "as described in the most recently published edition of the [DSM] by the American Psychiatric Association." *Id.* Based on this language, the WCCA determined that "the legislature intended to require that a rebuttal of a PTSD diagnosis, to constitute substantial proof to the contrary,

---

[6]     In short, Rowe's appeal to the WCCA asserted that the compensation judge erred by relying on Dr. Young's opinion because his opinion was not based on the most recently published edition of the DSM; that the compensation judge erred in determining that the City rebutted the presumption, emphasizing that Dr. Young's opinion lacked adequate foundation and that there was no evidence in the record to rebut the presumption until the date of Dr. Young's report; and that several of the compensation judge's findings relied on misstated facts.

10

be made through an [IPE] using the most recently published edition of the DSM at the time of the IPE." *Id.*

The WCCA then analyzed the facts in light of its interpretation of the statute. *See id.* It concluded that Dr. Young's failure to use the DSM-5-TR contravened the statute governing the PTSD presumption and that his entire opinion should not have been considered by the compensation judge. *See id.* Because Dr. Young's opinion was the only evidence the City offered to rebut the presumption, the WCCA found that there was no evidence in the record to rebut the presumption and that the compensation judge's denial of Rowe's claim was manifestly contrary to the evidence. *See id.* As a result, the WCCA set aside the compensation judge's finding that the City had rebutted the statutory presumption and made its own finding that the City had failed to rebut the presumption. *See id.* at *10.

The WCCA vacated the compensation judge's order denying benefits and remanded the case for further consideration of issues not reached by the compensation judge, including an assessment of Rowe's entitlement to penalties for a frivolous denial of Rowe's claim under Minnesota Statutes section 176.225, subdivision 1(5). *Id.*

### ANALYSIS

The question before us is whether the WCCA erred in vacating the compensation judge's determination that Rowe was ineligible for benefits. Under the Workers' Compensation Act, a "mental impairment … arising out of and in the course of employment" is a compensable occupational disease. Minn. Stat. § 176.011, subd. 15(a). The term "mental impairment" is limited to "a diagnosis of [PTSD]," which is defined as

11

"the condition as described in the most recently published edition of the [DSM] by the American Psychiatric Association." Minn. Stat. § 176.011, subd. 15(d). The diagnosis must be made "by a licensed psychiatrist or psychologist." *Id.* An employee in a qualifying profession[7] is entitled to a presumption that their PTSD diagnosis is an occupational disease "due to the nature of employment" if the employee presents a qualifying PTSD diagnosis, and the employee has not previously been diagnosed with PTSD.[8] Minn. Stat. § 176.011, subd. 15(e). Once the presumption applies, it can be rebutted only by "substantial factors brought by the employer or insurer." *Id.*

For the purposes of this appeal, the parties, the compensation judge, and the WCCA all agree that Rowe is entitled to the presumption. Accordingly, the scope and applicability of the presumption is not at issue in this case.[9] Rather, the dispute here is

---

[7]     The statute applies to:

> a licensed police officer; a firefighter; a paramedic; an emergency medical technician; a licensed nurse employed to provide emergency medical services outside of a medical facility; a public safety dispatcher; a correctional officer or security counselor employed by the state or a political subdivision at a corrections, detention, or secure treatment facility; a sheriff or full-time deputy sheriff of any county; or a member of the Minnesota State Patrol.

Minn. Stat. § 176.011, subd. 15(e).

[8]     In *Juntunen v. Carlton County*, we clarified that "an employee need only present a diagnosis for the presumption to apply, not that the diagnosis is determined by a compensation judge to be more credible or persuasive than any competing diagnosis offered by an employer." 982 N.W.2d 729, 740 (Minn. 2022).

[9]     The parties do not question whether the presumption applies only to *causation* (i.e., that the statute creates a presumption only that the PTSD diagnosis was "due to the nature of employment") and instead treat the presumption as also substantively applying

12

whether the WCCA properly set aside the compensation judge's finding that the City had provided substantial factors to *rebut* the presumption.

The WCCA may set aside a compensation judge's finding "only if there is no evidence in the record that a reasonable mind might accept as adequate to support the compensation judge's finding." *Lagasse v. Horton*, 982 N.W.2d 189, 202–03 (Minn. 2022). Only if the WCCA properly sets aside a finding, may it then make its own substitute finding. *Id.* at 202–03. Here, the WCCA found that the City's evidence failed to rebut the presumption, reasoning that the compensation judge erred by considering Dr. Young's opinion because Dr. Young relied on the DSM-5. The WCCA's decision rests on its interpretation of Minnesota Statutes section 176.011, subdivision 15(d) and (e), which led the WCCA to conclude that the DSM-5-TR is the most recent DSM edition and that an IPE based on the most recent DSM edition is the only permissible method of rebuttal.[10] Implicit in the WCCA's reasoning is the determination that a compensation

_____

to the validity of a PTSD *diagnosis* itself. Accordingly, we do not take up this question. We note only that we have said that when a statutory presumption applies, an employer must "make a strong showing," *Linnell v. City of St. Louis Park*, 305 N.W.2d 599, 601 (Minn. 1981), by introducing "substantial evidence to rebut the presumption," *Jerabek v. Teleprompter Corp.*, 255 N.W.2d 377, 380 (Minn. 1977). We have also explained that if there is a presumption, "the employer faces a higher burden than in a case in which no presumption applies." *Juntunen*, 982 N.W.2d at 741. Although we indicated in *Juntunen* that the presumption applies to the PTSD diagnosis itself, not just causation, it is unclear whether the presumption also applies to the PTSD diagnosis such that an employer has a "higher burden" to rebut the diagnosis. *See id.* at 743. This open question may have significant implications for an employer attempting to refute a PTSD diagnosis. But because the parties do not dispute the applicability or scope of the presumption in this case, we need not address those issues here.

[10] As noted above, the WCCA reasoned that "the legislature intended to require that a rebuttal of a PTSD diagnosis, to constitute substantial proof to the contrary, be made

13

judge may not, as a matter of law, consider an employer's IPE based on an outdated DSM when evaluating whether the employer rebutted the presumption.

To resolve this dispute, we begin by determining whether the WCCA correctly interpreted the relevant statutory provisions. We hold that the WCCA correctly concluded that the DSM-5-TR is the most recent edition of the DSM. But we further hold that the WCCA erred when it concluded that an IPE based on the most recent DSM is the sole method of rebuttal and that a compensation judge cannot consider an employer's IPE based on an outdated DSM. We then apply our interpretation of the statute to the facts in this case to determine whether the WCCA properly set aside the compensation judge's finding. Ultimately, we hold that the WCCA erred when it set aside the compensation judge's finding due to Dr. Young's reliance on an outdated edition of the DSM. Finally, we turn to two alternative arguments raised by Rowe, and we conclude that we should remand those issues to the WCCA.

I.

Because the WCCA's decision to set aside the compensation judge's finding rests on its interpretation of Minnesota Statutes section 176.011, subdivision 15(d) and (e), we begin by interpreting those provisions. We review this issue de novo. *See Lagasse*, 982 N.W.2d at 205 (holding that we evaluate questions of law in workers' compensation

---

through an [IPE] using the most recently published edition of the DSM at the time of the IPE." *Rowe*, 2024 WL 3973710, at \*9.

14

cases de novo).[11] The WCCA grounded its decision in three interpretations of the statute, concluding that (A) the DSM-5-TR is the most recently published edition of the DSM; (B) an IPE based on the most recently published edition of the DSM is an employers' sole method of rebuttal; and (C) a compensation judge cannot consider an employer's IPE based on an outdated DSM. We examine each interpretation in turn, accepting the first but rejecting the second and third.

A.

First, we evaluate what the Workers' Compensation Act means when it refers to "the *most recently published edition* of the [DSM] by the American Psychiatric Association." Minn. Stat. § 176.011, subd. 15(d) (emphasis added). When interpreting a statute, we seek to ascertain and effectuate the Legislature's intent. *Johnson v. Concrete Treatments*, Inc., 7 N.W.3d 119, 126 (Minn. 2024); Minn. Stat. § 645.16. If a statute is unambiguous, we apply its plain meaning. *Johnson*, 7 N.W.3d at 126. And "[a] statute is ambiguous only if it is susceptible to more than one reasonable interpretation." *Id.* (citation omitted) (internal quotation marks omitted).

The key question here is whether the phrase "the most recently published edition of the [DSM] by the American Psychiatric Association" refers only to the *numeric* edition

---

[11] The City argues that this case hinges on the WCCA improperly making its own credibility determination regarding the experts' differing views on whether the text revisions to the DSM-5-TR materially impact a PTSD diagnosis. But as explained in more detail above, the WCCA's decision to reverse the compensation judge's finding rests on its interpretation of Minnesota Statutes section 176.011, subdivision 15(d) and (e). Accordingly, the crux of the WCCA's decision turns on a question of law that we review de novo.

assigned to the DSM (e.g., fifth edition or "DSM-5"), or whether it includes *text revisions* to an existing numeric edition (e.g., fifth edition text revision or "DSM-5-TR"). The City argues that the phrase refers only to the numeric edition listed on the DSM. In support of this view, the City emphasizes that the covers of the DSM-5 and DSM-5-TR both read "FIFTH EDITION" and that the Legislature elected to use the word "edition," not "version." Rowe counters that "edition" and "version" are essentially synonymous, meaning that the DSM-5-TR is the most recent edition.

Because "edition" is not defined in the statute, we can look to its ordinary meaning to determine if its use in the statute is ambiguous. *State v. Powers*, 962 N.W.2d 853, 858 (Minn. 2021). "We do not read words in isolation[.]" *Save Lake Calhoun v. Strommen*, 943 N.W.2d 171, 177 (Minn. 2020). Rather, "the meaning of a word is informed by how it is used in the context of a statute." *Id.*; *see also State v. Balsley*, 10 N.W.3d 671, 675 (Minn. 2024) (noting that we interpret undefined words "in light of the surrounding context" (citation omitted) (internal quotation marks omitted)).

Here, "edition" is used in the phrase "the most recently published edition of the [DSM] by the American Psychiatric Association." Minn. Stat. § 176.011, subd. 15(d). Considering "edition" in light of this entire phrase demonstrates that "the most recently published edition of the [DSM] by the American Psychiatric Association" encompasses new text-revision publications, even if the new publication belongs to the same numeric edition. The inclusion of "published" in the statute places an emphasis on DSM *publications* and cuts against the City's narrow interpretation, which would exclude the most recent publication of the DSM if it happens to be labeled with the same numeric

16

edition as the previous publication. And because "edition" refers specifically to *published* editions of the DSM, the manner in which the American Psychiatric Association regularly publishes the DSM provides relevant context to the meaning of "edition" here. For decades, the American Psychiatric Association's practice has been to publish a new numeric edition (e.g., the DSM-IV in 1994) and then to publish a text revision to that edition several years later (e.g., the DSM-IV-TR in 2000), before publishing a new numeric edition (e.g., the DSM-5 in 2013).[12] This publication pattern also cuts against the City's narrow interpretation. Moreover, because the statute uses the word "edition" in reference to a very specific text—the DSM published *by the American Psychiatric Association*—it is notable that the American Psychiatric Association itself describes the DSM-5-TR as an "edition." *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* xxi (5th ed. 2022).

Considering dictionary definitions of "edition" within the context of the statute provides further support for this interpretation. *See Poehler v. Cincinnati Ins. Co*., 899 N.W.2d 135, 140–41 (Minn. 2017) ("In determining the plain and ordinary meaning of undefined words or phrases in a statute, we may consult the dictionary definitions of those words and apply them in the context of the statute."); *see also Lagasse*, 982 N.W.2d at 197–98 (using dictionary definitions to determine the plain meaning of a phrase in the Workers' Compensation Act). Dictionary definitions of "edition" reveal two themes—that

---

[12]     *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994); Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* (4th ed. 2000); Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013).

an "edition" is contingent on the timing of publication and that an "edition" is characterized as a version of a published text with changes differentiating it from previous versions.[13] These definitions point to an interpretation that includes new text-revision publications, even if the new publication may belong to the same numeric edition. And none of these definitions support the City's narrow view that the term "edition" refers only to the numeric edition of a publication.

Based on the analysis above, we hold that "the most recently published edition of the [DSM]" unambiguously includes text-revision publications of the DSM and is not limited to the numeric edition. This means that at the time of Dr. Young's IPE, the DSM-5-TR was "the most recently published edition of the [DSM]" and that Dr. Young relied on an outdated edition (the DSM-5).

B.

Second, we consider the WCCA's contention that an IPE based on the most recent DSM is the only way for an employer to rebut the presumption. It is true that the statute makes clear that an *employee* seeking the presumption must—among other

---

[13]     *See Edition*, *American Heritage Dictionary of the English Language* 585 (3d ed., 1996) ("[a.] The entire number of copies of a publication issued at one time or from a single set of type. [b.] A single copy from this group…. [d.] A version of an earlier publication having substantial changes or additions: a newly revised edition of a standard reference work."); *Edition*, *Random House Webster's Unabridged Dictionary*, 620 (2d ed., 2001) (defining "edition" as "one of a series of printings of the same book, newspaper, etc., each issued at a different time and differing from another by alterations, additions, etc."); *Edition*, *Black's Law Dictionary* 650 (12th ed. 2024) ("[a] specific form or version of a published text"); *see also Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 759 n.2 (Minn. 2010) (recognizing that it can be useful and appropriate to consult Black's Law Dictionary when conducting a plain-language reading of a statute).

requirements—present a diagnosis of PTSD "as described in the most recently published edition of the [DSM]." *See* Minn. Stat. § 176.011, subd. 15(d), (e).[14] But the statute does not explicitly require an *employer* rebutting the presumption to obtain an IPE relying on the most recent DSM edition. Instead, the statute states only that the employer can rebut the presumption with "substantial factors." Minn. Stat. § 176.011, subd. 15(e). We elaborated in *Juntunen v. Carlton County* that the statutory presumption "is rebuttable but only by substantial proof to the contrary," that the "employer must make a strong showing," and that "the employer faces a higher burden than in a case in which no presumption applies." 982 N.W.2d 729, 741 (Minn. 2022) (citation omitted) (internal quotation marks omitted).

---

[14] We note that Dr. Aleknavicius's March 2022 PTSD diagnosis under the DSM-5 presents a potential question of whether her diagnosis satisfied this statutory requirement. Although Dr. Aleknavicius *evaluated* Rowe before the DSM-5-TR's publication—when the DSM-5 was the most recently published edition—her written diagnosis was issued days *after* the DSM-5-TR's publication. That said, we do not address this question for two reasons.

First, the issue of whether Rowe triggered the presumption is not before us. Rather, we are asked to determine whether the WCCA properly set aside the compensation judge's finding that the City had provided substantial factors to rebut the presumption.

Second, although the parties refer to this diagnosis timing issue in their briefs, neither party acknowledges or addresses the central statutory question—whether a diagnosis issued *after* the publication of a new DSM edition is based on "the most recently published edition of the DSM" when the underlying evaluation relied on the prior (but at the time most recent) DSM edition. *See State Dep't of Lab. & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to reach issue in the absence of adequate briefing).

Accordingly, we decline to consider whether Dr. Aleknavicius's March 2022 diagnosis properly relied on the most recently published edition of the DSM.

The WCCA erred when it concluded that an IPE based on the most recent edition of the DSM is the only proof that can constitute "substantial factors" to rebut the presumption. To the contrary, we have reasoned that there are multiple ways for employers to rebut the presumption. In *Juntunen*, we explained that "[a]n employer may rebut a diagnosis by proving that the employee did not in fact receive such a diagnosis (for example, if the employer had evidence that the employee fabricated the records), but the employer could also demonstrate that the employee's diagnosis was invalid or not credible." *Id.* at 743. And we further stated that an employer can rebut the presumption "with a competing diagnosis or with *other evidence*." *Id.* at 742 n.9 (emphasis added). To be sure, an employer's IPE that is based on the most recent DSM and determines that the employee does not meet the DSM criteria for PTSD could be strong evidence to rebut the presumption. But such an IPE is not the *exclusive* mode of rebuttal. For example, "other evidence" might include an expert opinion undermining the methodology of, or pointing out errors in, the expert opinion diagnosing the employee with PTSD. Such a report may not require examination of the employee at all.[15] And it is far from clear that a rebuttal expert is required in every case. As noted in *Juntunen*, an employer could, for example, provide "evidence that the employee fabricated the records [related to the diagnosis]" to rebut the presumption. 982 N.W.2d at 743.

---

[15] To illustrate this point, take a scenario where a psychologist diagnoses an employee with PTSD despite finding that the employee meets *none* of the required criteria for that diagnosis. A rebuttal expert need not examine the employee to point out that the diagnosis is invalid and thereby provide a "substantial factor" in favor of rebuttal.

20

For these reasons, we hold that an IPE is not the sole way for an employer to rebut the presumption. The statute and our case law allow an employer to rebut the presumption through any number of "substantial factors."

C.

Third, based on the analysis above, we also reject the WCCA's determination that an employer's IPE using an outdated DSM must be excluded from the compensation judge's consideration as a matter of law. We agree with the City that the fact that an employer's IPE is based on an outdated DSM goes to the IPE's probative weight in rebutting the presumption, not its admissibility.[16] By holding that a compensation judge cannot—as a matter of law—consider an employer's IPE that relies on an outdated edition of the DSM, the WCCA limited the evidence to be considered by the compensation judge in a manner not mandated by the statute.

A compensation judge may consider an employer's IPE based on an outdated DSM and assign it appropriate probative weight. In most cases, the probative value of an employer's IPE for purposes of rebutting the presumption will turn on whether it meaningfully undermines the validity or credibility of the PTSD diagnosis that gave rise to the presumption. *See Juntunen*, 982 N.W.2d at 743 (explaining that the employer can rebut the presumption by demonstrating that "the employee's diagnosis was invalid or not credible"). Permitting compensation judges to assess the probative value of an IPE based

---

[16]    We observe that "when a compensation judge makes an investigation or conducts a hearing, the compensation judge is bound neither by the common law or statutory rules of evidence nor by technical or formal rules of pleading or procedure." Minn. Stat. § 176.411, subd. 1.

21

on an outdated DSM does not contradict our direction in *Tea v. Ramsey County*, 5 N.W.3d 114 (Minn. 2024). There, we explained that a compensation judge must make findings regarding the application of the DSM criteria "in relation to evidence offered by [a] medical professional"—not based upon the judge's own application of the criteria. *Id.* at 122. Accordingly, if the employer's expert opinion speaks to the validity or credibility of the employee's PTSD diagnosis, the statute does not preclude a compensation judge from weighing the probative value of the opinion and considering it accordingly.

Given this framework, an employer's IPE based on an outdated DSM will generally have less probative value than an IPE based on the most recent DSM and, as a result, it is possible that such an IPE may not be sufficient to rebut the presumption.[17] But the compensation judge must be permitted to consider the employer's expert testimony and determine whether an IPE based on an outdated DSM meaningfully undermines the validity or credibility of the employee's PTSD diagnosis that gave rise to the presumption. To be clear, we do not suggest that an IPE based on an outdated DSM will necessarily be sufficient to rebut the presumption or that it is advisable for an employer's

---

[17]    We observe that the probative value of an employer's IPE based on an outdated DSM could vary depending on the circumstances. For example, the difference in probative value between an employer's IPE under the DSM-5 and one conducted under the DSM-5-TR may be minimal, as the diagnostic criteria are identical. And the difference in probative value may be even less pronounced where, as here, the employer's IPE uses the outdated DSM-5 to rebut a diagnosis that was also originally made under the DSM-5.

By contrast, consider a scenario in which the employer's IPE relies on an outdated DSM containing materially different diagnostic criteria from those in the most recent edition. In that scenario, the IPE may carry limited probative value because it would do little to undercut the validity or credibility of a PTSD diagnosis rendered under the updated, and materially different, criteria.

expert to rely on an outdated DSM. We hold only that the statute does not require exclusion of an employer's IPE as a matter of law solely because it relies on an outdated edition of the DSM.

Accordingly, although we agree with the WCCA that the DSM-5-TR is the most recent edition of the DSM under the statute, we hold that an IPE is not the only way an employer can rebut the presumption, and a compensation judge is not barred from considering an employer's IPE based on an outdated edition of the DSM.

## II.

Having interpreted the relevant provisions of the Workers' Compensation Act, we turn to whether the WCCA properly set aside the compensation judge's finding that the City had rebutted the presumption.[18] As noted above, the WCCA may set aside a compensation judge's finding "only if there is no evidence in the record that a reasonable mind might accept as adequate to support the compensation judge's finding." *Lagasse*, 982 N.W.2d at 202–03.

Here, the WCCA applied its narrow interpretation of the statute and excluded Dr. Young's opinion from the record because Dr. Young's IPE relied on the DSM-5 instead of the DSM-5-TR. Although we agree that the DSM-5-TR is the most recent

---

[18]    This court has treated the determination of whether an employer rebutted the PTSD presumption as a finding. *See Juntunen*, 982 N.W.2d at 741–42, 742 n.7 (explaining that this court "must decide whether the WCCA properly found that the County did not rebut the PTSD presumption" and applying the standard of review for additional findings by the WCCA (citing *Lagasse*, 982 N.W.2d at 202–03)). And in this case, the WCCA and the parties have consistently characterized and treated the compensation judge's determination that the City had rebutted the presumption as a factual finding. *See Rowe*, 2024 WL 3973710, at *6.

edition of the DSM, Dr. Young's reliance on the DSM-5 did not mean that Dr. Young's IPE could not be considered by the compensation judge or that it should be excluded from consideration on appeal. As explained above, the fact that an employer's IPE is based on an outdated DSM goes to the probative weight of the IPE, not its admissibility. Accordingly, the WCCA erred in concluding that "[b]ecause Dr. Young's opinion was not based on the DSM-5-TR, accepting the opinion was error and the [compensation] judge's denial of the employee's statutorily presumed, established, and unrebutted PTSD diagnosis was manifestly contrary to the evidence."[19] *Rowe*, 2024 WL 3973710, at *9.

Moreover, in focusing solely on Dr. Young's IPE, the WCCA did not acknowledge other components of Dr. Young's opinion in the record. In addition to the IPE, Dr. Young's opinion also included his criticisms of Dr. Aleknavicius's March 2022 diagnosis under the DSM-5 (set forth both in his report and testimony) and his testimony criticizing Dr. Aleknavicius's July 2023 diagnosis under the DSM-5-TR. These additional components of Dr. Young's opinion are significant because they serve to undermine the validity and credibility of Dr. Aleknavicius's diagnoses. *See Juntunen*, 982 N.W.2d at 743. So long as there was adequate foundation for Dr. Young's opinion, Dr. Young's IPE—along with his critiques of Dr. Aleknavicius's March 2022 and July 2023 diagnoses—amounts to evidence that a reasonable mind might accept as adequate to

---

[19] We note that Dr. Young's IPE was conducted in response to Dr. Aleknavicius's March 2022 diagnosis, which was also based on the DSM-5. Given the unique facts of this case, Dr. Young's reliance on the outdated DSM-5 may have been particularly justified, as it allowed him to provide an IPE based on the same standards applied by Dr. Aleknavicius.

24

support the compensation judge's finding that the City had met its burden to present substantial factors that rebutted the presumption. Accordingly, we must reverse the WCCA's decision to set aside the compensation judge's finding solely "[b]ecause Dr. Young's opinion was not based on the DSM-5-TR."[20] *See Rowe*, 2024 WL 3973710, at *9.

### III.

Finally, Rowe asks us to consider two issues that the WCCA did not reach: whether the compensation judge erred in finding that the City rebutted the presumption because Dr. Young's opinion lacked adequate foundation, and whether the compensation judge erred by failing to award Rowe benefits from March 2022 through November 2022. Rowe raised both issues to the WCCA, but the WCCA did not address them because it disposed of the case on the grounds discussed above.

---

[20] We acknowledge two issues that we do not reach here. First, the amicus brief of the League of Minnesota Cities urges us to address and reject the validity of a so-called "lifetime" PTSD diagnosis. But the WCCA did not directly engage with Dr. Aleknavicius's "lifetime" PTSD diagnosis. Because we need not weigh in on the validity of a so-called "lifetime" PTSD diagnosis to reverse the WCCA's decision, we decline to do so.

Second, the City contends that we should address a footnote in the WCCA's decision in which the WCCA asserted that Rowe could be statutorily entitled to penalties for frivolous denial of benefits even if the compensation judge correctly determined that the City had rebutted the presumption. *See Rowe*, 2024 WL 3973710, at *10 n.12. At oral argument, Rowe's counsel conceded that penalties for frivolous denial of benefits are limited to situations in which an employee is ultimately awarded compensation, because the penalty amount is a percentage of the compensation award. *See* Minn. Stat. § 176.225, subd. 1 (when an employer frivolously denies an employee's claim, "in addition to the total amount of compensation award," the employee is entitled to "up to 30 percent of *that total amount*" (emphasis added)). Given this concession, we need not address this issue further at this time.

25

When necessary, we may remand a case "to the [WCCA] for a new hearing or for further proceedings with such directions as the court deems proper." Minn. Stat. § 176.481. We have determined that remand was necessary when the WCCA did not have occasion to reach a particular question presented by the parties. *See, e.g.*, *Bjornson v. McNeilus Companies, Inc*., 20 N.W.3d 2, 6 (Minn. 2025); *Gamble v. Twin Cities Concrete Products*, 852 N.W.2d 245, 250–51 (Minn. 2014). This is also consistent with our approach in cases outside of the workers' compensation context. *See, e.g.*, *State v. Hall*, 931 N.W.2d 737, 744 (Minn. 2019) (reversing and remanding to the court of appeals to consider an unaddressed alternative argument); *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 922 (Minn. 2009) (reversing and remanding to the court of appeals to consider issues that it did not initially address). Accordingly, we remand to the WCCA for consideration of both issues.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the WCCA and remand to the WCCA for consideration of Rowe's two alternative arguments.

Reversed and remanded.